IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM KIMBLE,                      )
                                     )
            Petitioner,              )
                                     )
      v.                             )        1:17CV746
                                     )
ERIK A. HOOKS,[1]                    )
                                     )
            Respondent.              )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

       Petitioner William Kimble, a prisoner of the State of North Carolina, has filed two

Petitions [Doc. #2 and Doc. #2-2] seeking a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. The Petitions are based on Petitioner's convictions from Rowan and Cabarrus

Counties in March and April 2016, for violation of state sex offender registration and residence

restriction statutes. The record submitted by the State in this case includes documents tending

to show that, on February 27, 2015, Petitioner, who is a convicted sex offender required to

register his address, submitted a change of address form to the Cabarrus County Sheriff's

office stating that he was moving from 173 Chestnut Drive S.W., Concord, North Carolina

(hereinafter "the Cabarrus address") to 420 Institute Street, Salisbury, North Carolina

(hereafter "the Rowan address"). (State's Brief [Doc. #10] Ex. 1A.) When he submitted the

form, Petitioner told Cabarrus County officers that the Rowan County Sheriff's office had

---

[1] Petitioner originally named the State of North Carolina as the Respondent, and the Court substitutes Erik A.
Hooks, Secretary of the North Carolina Department of Public Safety, as the proper Respondent in this
§ 2254 action, as noted in Respondent's Answer [Doc. #8].

approved the move. However, the next day the Rowan County Sheriff's Department informed Cabarrus County that the Rowan address was within 1000 feet of a child care center located on the campus of nearby Livingstone College, which meant under N.C. Gen. Stat. § 14-208.16 that Petitioner could not live there. (Id., Ex. 1.) Rowan County Deputy Karen Brindle communicated this to Petitioner in early March of 2015. (Id.)

Petitioner responded by filing a change of address form with Cabarrus County on March 20, 2015, which stated that he had moved back to the Cabarrus address. (Id., Ex. 2.) A month later, on April 24, 2015, he appeared in person at the Cabarrus County Sheriff's Office as his registering office, and he submitted a verification form certifying that his home address information on file was true and correct. (Id., Ex. 3.) However, after being placed on probation for a misdemeanor assault conviction in Rowan County, Petitioner informed his probation officer, Jaquetta Ingram, on June 10, 2015, that he had lived at the Rowan address since January or February, but might move to Cabarrus County. (Id., Ex. 4.) Ingram, knowing Petitioner to be a sex offender, checked the sex offender registry, discovered that it listed the Cabarrus address, and informed the Cabarrus County Sheriff's Department of this discrepancy. (Id., Ex. 1.) The next day, June, 11, 2015, the Rowan County Sheriff's Department also served Petitioner with a domestic violence protective order at the Rowan address. (Id., Ex. 5.) Later that same day, Ingram conducted a home visit at the Rowan address. Petitioner was not home, but she waited and watched him walk up to the Rowan address. (Id., Ex. 6.) When she told him she was there for a home visit, he removed a key

2

from his pocket, unlocked the door, and allowed Ingram in to visit, telling her again that he intended to call his sister in Concord to see if he could live with her. (Id.)

On June 15, 2015, Petitioner's wife gave a statement to the Rowan County Sheriff's Department in which she stated that she and Petitioner had lived at the Rowan address since February of that year, that Petitioner had been told he could not live there, and that he continued to do so despite telling the Cabarrus County Sheriff's Department that he had moved back to the Cabarrus address. (Id., Ex. 7.) The next day, June 16, 2015, Petitioner gave a statement to the Rowan County Sheriff's Department admitting that he moved to the Rowan address in January or February of 2015, that Deputy Brindle told him he could not live there soon after he filed the change of address form in February of 2015, but that he did not have anywhere to go and could not move away at that time. (Id., Ex. 8.) He stated that he was "currently" back at the Cabarrus County address. (Id.)

These facts led to two sets of charges against Petitioner. The charges from Cabarrus County charged Petitioner with forging or submitting under false pretenses a verification form required for sex offender registration, related to the alleged false statements on the change of address form he filed on March 20, 2015, and the address verification form he submitted on April 24, 2015. (Id., Ex. 9.) Petitioner pled guilty to both of these charges and received a sentence of 20 to 33 months of imprisonment, which was in the mitigated range for his convictions. (Id., Ex. 11.) Petitioner filed no appeal of these convictions. However, he did submit a Motion for Appropriate Relief. (Id., Ex. 12.) When that Motion was denied, Petitioner filed a Petition for a Writ of Certiorari with the North Carolina Court of Appeals.

3

(Id., Ex. 14.) That court denied the Petition (id., Ex. 16) and Petitioner made no further attempt to challenge the Cabarrus County convictions in state court.

The charges from Rowan County alleged that Petitioner was a convicted sex offender living within 1000 feet of a child care center and that he had obtained the status of a habitual felon. (Id., Ex. 17.) Petitioner pled guilty to these charges and, pursuant to the terms of his plea agreement, received a sentence of 87 to 117 months of imprisonment, which was at the bottom of the mitigated range for his convictions. (Id., Exs. 18, 19.) He again did not appeal, but did file a Motion for Appropriate Relief in the trial court, which that court denied. (Id., Exs. 20, 21.) Petitioner filed a Petition for a Writ of Certiorari, which the North Carolina Court of Appeals dismissed without prejudice because Petitioner did not attach the necessary supporting documents. (Id., Exs. 22, 24.) Petitioner did not refile that Petition before bringing the present action in this Court. However, during the pendency of the present proceedings, Petitioner refiled his Petition for Certiorari, which was denied by the North Carolina Court of Appeals. (Brief in Support of Amendment [Doc. #20], Exs.)

In filing his case in this Court, Petitioner submitted a single *in forma pauperis* form and two very similar petition forms, one for his Rowan County convictions [Doc. #2] and one for his Cabarrus County convictions [Doc. #2-2].[1] The Court docketed the Rowan County Petition as the Petition in this case and the Cabarrus County Petition as an exhibit to the

---

[1] As Respondent points out, it is not proper for Petitioner to challenge convictions from two separate courts in a single proceeding. However, given the related nature of the two sets of charges and the way that they were docketed here, the Court will address both Petitions rather than have Petitioner refile one of them and begin a separate proceeding.

4

Petition. Petitioner also filed a single Memorandum [Doc. #3] supporting the Petitions, as well as an Amendment [Doc. #4] and a Memorandum [Doc. #5] supporting the Amendment. Respondent then filed a Motion [Doc. #9] seeking summary judgment. Petitioner filed a Response [Doc. #14] to that Motion, but also made a number of further filings himself, including a Motion [Doc. #12] seeking an appointment of counsel, a Motion to Amend [Doc. #13], a second Amendment [Doc. #16] to the Petitions, a Brief [Doc. #17] supporting the second Amendment, a Motion [Doc. #18] to expand the record to add certain exhibits, and a Motion [Doc. #21] for an evidentiary hearing. All of these motions by the parties are now pending before the Court. The Court will grant Petitioner's Motions to amend and to expand the record, and the Court has considered the claims and arguments set out therein. For the reasons set out below, the Court will recommend that Respondent's Motion for Summary Judgment be granted. Petitioner's Motions for an evidentiary hearing and for appointment of counsel will be denied.

<u>Claims</u>

Petitioner raises two similar claims for relief in each of his Petitions. With respect to the Cabarrus County convictions, Petitioner alleges first that his due process rights were violated because the Rowan address did not violate registration requirements, since the child care center which he was living within 1000 feet of was on the property of an institution of higher education and he believes that, under N.C. Gen. Stat. § 115C-563 and N.C. Gen. Stat. § 14-208.16, a child care center located on the property of an institution of higher education does not count as one that triggers residence restrictions for registered sex offenders.

5

(Cabarrus Petition, § 12, Ground One.) Petitioner's second claim is that his attorney provided ineffective assistance of counsel based on the attorney's alleged "failure to investigate [Petitioner's] case and protect the rights the [Petitioner] has, also advise [Petitioner] he could pled [sic] guilty to an open plea and receive a reduction in sentence for acceptance of responsibility." (Id., Ground Two.) He adds that counsel also failed to "move to suppress illegally [sic] arrest, conviction, and wrongful imprisonment." (Id.)

As for the Rowan County convictions, Petitioner alleges first that his rights were violated by his unlawful arrest. He again bases this claim on his belief that his residence was near a college with a childcare center on its property and that this did not trigger the residence restrictions applicable to sex offenders. (Rowan Petition, § 12, Ground One.) His second claim challenging the Rowan convictions is a claim of ineffective assistance of counsel, contending that his attorney failed explain the rights Petitioner would waive by pleading guilty, failed to explain the rights he had to appeal under his plea agreement, advised Petitioner that he could be charged as a habitual felon and receive a twenty year sentence if he did not plead guilty, and failed to properly research Petitioner's case to determine that he was not guilty based on Petitioner's theory set out in his first claim for relief. Petitioner specifically states that counsel failed to properly analyze and understand N.C. Gen. Stat. § 110-86(g)(2). (Id., Ground Two.) That statute excludes certain forms of "child care" from the definition of "child care" which would trigger sex offender restrictions. The subsection cited by Petitioner, subsection (g)(2), excludes "Bible schools conducted during vacation periods."

6

In Petitioner's memorandum, he expands on these claims by adding an argument that the child care center involved with the Rowan County convictions was on the campus of a college and not readily visible. Therefore, he reasons that he did not "knowingly" live within 1000 feet of that center and that his attorney should have discovered this. Petitioner also states that after he informed counsel he would accept a plea offer of 76 to 104 months of imprisonment on the Rowan County charges, counsel went to communicate this to the prosecutor, but returned with a "plea of 87-117 months." (Memorandum [Doc. #3] at 7.) Petitioner claims this violated his rights because he did not have a chance to decide on the plea, but instead had the offer accepted by counsel without consultation.

In Petitioner's first Amendment [Doc. #4] to his Petitions and its supporting Memorandum [Doc. #5], Petitioner adds that Cabarrus County authorities talked to him for 10-15 minutes at the Cabarrus address about a week before his arrest and that two sets of charges related to the same incidents put him at risk of double jeopardy. He contends that trial counsel could have contested the charges for these additional reasons.

In Petitioner's Brief [Doc. #15] supporting his Response to the State's Motion for Summary Judgment, Petitioner adds a claim that the Cabarrus County indictments contained an overly inclusive set of dates regarding his crimes. Specifically, Petitioner contends that for part of the range of dates listed in the indictment, he was not in violation of the state statutes because he actually was living at the Rowan address after having so notified Cabarrus County. Petitioner also contends that the indictments cited N.C. Gen. Stat. § 14-208.11 when they should have cited subsection (a)(1) of that same statutory section. Finally, Petitioner contends

7

that at the time of his arrest, he was living at the Cabarrus address, consistent with the notification forms. Petitioner faults authorities in Rowan County for obtaining a statement from his wife at a time when she was vulnerable and angry with him. Petitioner also faults authorities in Rowan County for obtaining his statement at a time when he was stressed and upset. In addition, Petitioner claims that he was only stopping by the Rowan address to pick up furniture for the move back to the Cabarrus address at the time when Rowan officers served him with the domestic violence restraining order. Petitioner also contends that he attempted to transfer his probation from Rowan County to Cabarrus County in June of 2015.

Later, in an Amendment [Doc. #16], in a Brief [Doc. #20] supporting another Amendment [Doc. #19], and in a Motion to Amend attached to a Motion for an Evidentiary Hearing [Doc. #21], Petitioner argues that he had a 10-day grace period to report any moves to the Sheriff of the county to which he moved and that he was arrested within that grace period and/or that authorities attempted to build a case against him during that grace period. He also faults counsel for failing to be aware of this.

<u>Discussion</u>

In Respondent's Motion for Summary Judgment, Respondent argues the merits of both the Cabarrus County claims and the Rowan County claims.[2] In considering Petitioner's

---

[2] Respondent also contends that Petitioner's claims challenging the Rowan County conviction are procedurally barred because when the Petition was filed, Petitioner had not fully exhausted those claims by raising them in a petition seeking a writ of certiorari that was decided through a final ruling from the North Carolina Court of Appeals. Although Petitioner did file such a petition for certiorari as to his Rowan County convictions, it was dismissed without prejudice. Respondent argues that, if Petitioner tried to return to file a corrected petition for certiorari, he would be procedurally barred from doing so and that, consequently, he is also procedurally barred from bringing the claims in this Court. However, the North Carolina Court of Appeals specifically denied the petition for certiorari without prejudice to a corrected petition being filed, and did not set a time

8

claims, the Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. "Clearly established Federal law" includes only "'holdings, as opposed to the dicta,'" of the United States Supreme Court. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)). A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different" from the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). "[E]ven 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75–76

---

limit for doing so. Ultimately, Petitioner did return to the North Carolina Court of Appeals, refiled his petition for certiorari, and received a decision on that petition. Nothing in the decision denying that petition indicates the North Carolina Court of Appeals regarded it as procedurally barred. Therefore, this Court will also not impose any procedural bar, but will address the substance of all of the claims raised in Petitioner's habeas filings.

9

(2003)). "Rather, 'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. 82, 103 (2011)). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

Petitioner's first claim in both of his Petitions is that his residence at the Rowan County address did not violate North Carolina law because the child care center at a college should not actually qualify as a "child care center" under N.C. Gen. Stat. § 14-208.16, § 110-86(2)(g), and/or § 115C-563. Throughout his pleadings, Petitioner also makes other arguments that appear aimed at his innocence of one or both sets of charges. For instance, in his Brief supporting his Petitions, Petitioner adds an allegation that, because the child care center on the Livingstone campus was not readily visible, he did not "knowingly" live near it as required by N.C. Gen. Stat. § 14-208.16(a). In his first Amendment to his Petitions, and its supporting Memorandum, he claims that he was at the Cabarrus address where he was registered when Cabarrus County authorities talked to him for about ten to fifteen minutes a week before his arrest. Petitioner also argues that, because the charges in the two counties were related, they placed him in danger of double jeopardy. He contends in his Brief supporting his Response to the State's Motion for Summary Judgment that the Cabarrus County indictments charged an overly large range of dates for his alleged offenses, that those indictments did not cite the proper statutory subsection for his offenses, that Rowan County authorities obtained a

10

statement from his wife while she was angry with him, that they obtained the statement from him at a time when he was also upset, and that he was only stopping by the Rowan County address to pick up furniture when officers located him there and served him with a domestic violence order. Finally, in a Brief supporting his final attempt to amend his Petitions, he claims that he had a ten-day grace period to inform authorities of any moves and that he was within that grace period when arrested and when authorities built the case against him.

All of the above arguments are aimed at proving Petitioner's legal or factual innocence of the charges against him. However, Petitioner pled guilty to all of the charges. His guilty pleas waive any defects in the indictments, Tollett v. Henderson, 411 U.S. 258, 265 (1973), and also establish the elements of the offenses and negate the need for further proof by the prosecution, Boykin v. Alabama, 395 U.S. 238, 243 n.4 (1969). Thus, Petitioner's guilty plea defeats all of Petitioner's arguments set out above unless Petitioner can demonstrate that his guilty plea was unknowing or involuntary. Both state trial courts considered this issue in denying Petitioner's Motions for Appropriate Relief. The Rowan County decision noted that based on a review of the transcript, Petitioner answered "Yes" when asked if his attorney explained the charges against him and if he understood the charges. The Rowan County decision also noted that the judge who accepted Petitioner's guilty plea specifically found that a factual basis supported Petitioner's plea and that Petitioner was satisfied with counsel, was competent to stand trial, and was entering the plea freely, voluntarily, and understandingly. On that basis, the Rowan County court found that Petitioner's claims were "completely without merit." (State's Brief, Ex. 21.) Similarly, the court in Cabarrus County reviewed a

11

Transcript of Plea form present in the file and noted that, on that form, Petitioner acknowledged his guilt, stated that he understood the nature of the charges and their elements, and agreed that he was satisfied with his attorney's services. The Cabarrus County decision noted that the judge accepting the plea found that Petitioner's guilty plea was Petitioner's informed choice and was freely, voluntarily, and understandingly made. The Cabarrus County court then denied the Motion as frivolous. (Id., Ex. 13.)

"[R]epresentations of the defendant, [and] his lawyer . . . at . . . a [plea] hearing as well as any findings made by the judge accepting the plea constitute a formidable barrier in subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "In the absence of clear and convincing evidence to the contrary, [a petitioner] must be bound by what he said at the time of the plea." Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984). Respondent has submitted the Transcript of Plea forms for both convictions. (State's Brief, Exs. 10, 18.) A review of those forms confirms that they fully support the findings and conclusions made by the state trial courts in denying Petitioner's challenge to his guilty pleas.

Petitioner essentially attempts to overcome his guilty pleas through allegations of ineffective assistance of counsel, as set out in his second claims for relief in his Petitions. He contends that counsel provided ineffective assistance by incorrectly advising him to plead guilty despite the existence of all of the potential defenses and arguments described above, as well as by advising him to plead guilty to avoid a twenty-year sentence and failing to advise Petitioner of the rights he waived by pleading guilty or that he could enter an "open plea" in Cabarrus County and receive a sentencing reduction for acceptance of responsibility. He

12

additionally claims that, in Rowan County, he agreed to one plea offer only to have counsel agree to a different offer with a higher sentence.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the first prong of Strickland, a petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985). The Court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner presented at least some of these claims to the state courts, which rejected them. Rather than parse which claims Petitioner presented and where, the Court will simply address them all. Further, as discussed above, Petitioner's claims for ineffective assistance of counsel are intertwined with his claims challenging his guilty pleas. However, whether analyzed as attacks on Petitioner's guilty pleas or allegations of ineffective assistance of counsel, all of Petitioner's claims and contentions fail.

13

Petitioner's first argument is that the child care center on Livingstone's campus did not actually qualify as such under N.C. Gen. Stat. § 14-208.16, § 110-86(2)(g), and/or § 115C-563, and that his residence in Rowan County was proper because he was not living within 1000 feet of a child care center. Although raised as to all of his charges, Petitioner's argument appears irrelevant as to his Cabarrus County charges and convictions, given that he was not convicted for living too near a child care center in Cabarrus County, but instead for filing false registration forms. Therefore, even if his Rowan County address was a proper place for him to live, this did not change the fact that he filed the false forms in Cabarrus County. Nevertheless, Petitioner's claim fails in any event. Under N.C. Gen. Stat. § 14-208.16(a), registered sex offenders "shall not knowingly reside within 1,000 feet of the property on which any public or nonpublic school or child care center is located." Petitioner contends that the child care center located near the Rowan address was on the property of an institution of higher education, and therefore, not covered by this statute. However, this claim is faulty because N.C. Gen. Stat. § 14-208.16(c) states only that "[t]his section does not apply to child care centers that are located on or within 1,000 feet of the property of an institution of higher education where the registrant is a student or is employed." Thus, it does not exclude all child care centers located on the property of institutions of higher education, only those at institutions where a sex offender is a student or is employed. Petitioner makes no claim and points to nothing in the record to show that he was registered at or employed by Livingstone College. As for N.C. Gen. Stat. § 110-86(2)(g), that statutory subsection excludes "Bible schools conducted during vacation periods" from the definition of "child care." However,

14

there is no basis to find that exclusion applicable to Petitioner's case, as there is no indication that the child care center near the Rowan address was a Bible school or operated only during vacation periods. Finally, Petitioner cites to N.C. Gen. Stat. § 115C-563, which defines the terms "[h]ome school" and "[d]uly authorized representative of the State." So far as the record indicates, neither of those terms played any part in Petitioner's charges or convictions. In the end, all of the statutes cited in the Petitions are either inapplicable or completely irrelevant to his case.

Petitioner's next argument is that he did not "knowingly" reside near a child care center because the center on Livingstone's campus is not readily visible to the public. This argument is frivolous given that, as both the record shows and Petitioner acknowledges multiple times in his pleadings, Deputy Brindle advised him in March of 2015 that he was living near a child care center and that he had to move. Although he may not have known of the child care center earlier, he knew at that time and at all later times up until his arrest in June of 2015. As demonstrated by the evidence in the record and admitted through Petitioner's guilty pleas, he continued to live at the Rowan address during that time. Therefore, he knowingly resided near the child care center after being told to move due to its existence.

Petitioner next points out that Cabarrus County authorities talked to him at the Cabarrus address about a week before his arrest. Even if true, this establishes only that he was present in Cabarrus County at that time, not that he moved back there and lived there during the time period in question after Brindle told him be must leave the Rowan address. He also claims that when Rowan authorities located him at the Rowan address on multiple occasions

15

just before his arrest, he was merely there to visit friends or pick up belongings that he had not yet moved to Cabarrus County. Had Petitioner chosen to go to trial, he could have presented this evidence, but he chose not to do so upon the advice of his attorney. This advice, and Petitioner's acceptance of that advice, is understandable in light of the evidence against Petitioner, which would have included a statement from his wife that he lived with her at the Rowan address during the time in question, his Rowan County probation officer Ingram who would have testified that he let her in to conduct a home visit at the Rowan address in June of 2015, and the testimony of Ingram and other Rowan County authorities that they located Petitioner at that residence on multiple occasions. Petitioner's own statement, which appeared to admit some level of guilt, and his extensive criminal record would also have been introduced to impeach any testimony by him that he moved to, and remained in, Cabarrus County when he claimed to have done so. Given this situation, Petitioner's attorney's advice to Petitioner that he plead guilty for mitigated sentences rather than proceed to trial with long odds and face higher sentences does not constitute deficient performance under <u>Strickland</u>.

Petitioner also points to what he believes are problems with the indictments in his cases. He contends that the Cabarrus County indictment lists erroneous dates of offense because it cites the range of "02/19/2015-06/15/2015" and Petitioner was living in Rowan County with proper permission during the early part of that time period. He also faults that indictment for listing N.C. Gen. Stat. § 14-208.11 as the statute violated instead of specifying that he violated subsection (a)(1) of that statute. Petitioner believes that counsel should have challenged the indictment rather than recommend acceptance of a guilty plea. This claim is

16

meritless. Although the indictment does list the dates cited in one spot, in other portions, specifically in the portions actually setting out the charges against Petitioner, it lists the actual dates that Petitioner filed the false forms in Cabarrus County. (State's Brief, Ex. 9.) As for the statute, this Court is not aware of any requirement that a particular subsection of a statute be charged and Petitioner cites no authority for this proposition. Here, the indictment tracked the statutory language of § 14-208.11(a)(4) and alleged all of the statutory elements, and it does not appear that the indictment was deficient in any way. Further, if the alleged errors cited by Petitioner did pose a problem, any challenge by counsel would have almost certainly resulted in an amended indictment and the possible loss of an opportunity to accept a favorable plea bargain. Counsel was not deficient in failing to raise these points or in advising Petitioner to plead guilty despite these alleged problems.

Similarly, Petitioner contends that the indictments in Cabarrus and Rowan County constitute double jeopardy because the charges are factually related. He also contends that counsel should have raised this point. Petitioner is mistaken. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). No acquittal occurred in Petitioner's cases and it is also clear that he was not prosecuted or punished twice for the same offense. The indictments allege crimes occurring in different counties on different days and/or violating

17

different statutes. Petitioner had no viable argument based on double jeopardy, and his attorney did not provide ineffective assistance by failing to raise this meritless argument.

Petitioner also contends that authorities sought and obtained a statement from his wife at a time when she was upset with him, and obtained a statement from Petitioner when he was stressed and unhappy over his situation with his wife and living situation. Even if true, it is not clear what type of claim Petitioner seeks to raise. There is no prohibition against authorities seeking or obtaining statements from persons who are unhappy or stressed. Petitioner may be attempting to claim that these statements were involuntarily given. If so, he has no standing to raise a claim on behalf of his wife. He also provides no facts to support that allegation as to himself. Therefore, his claim is conclusory and can be denied as such.

Next, Petitioner faults authorities for allegedly arresting or building a case against him during a ten-day grace period allowed by North Carolina statutes. Under N.C. Gen. Stat. § 14-208.9(a), a sex offender required to file change of address forms has ten days to do so if they move to a new county. Petitioner's theory appears to be that he moved back to Cabarrus County as instructed and filed the appropriate forms. However, authorities later located him at the Rowan address in mid-June of 2015. Therefore, he reasons that he must have just moved there, that he had ten days to notify authorities, and that authorities acted against him before the expiration of the ten days. This argument ignores the evidence in the case which suggested that he remained in Rowan County during the entire period in question. It also ignores the fact that he could not legally move back to and register at the Rowan address because, as he well knew, it was within 1000 feet of a child care center on the Livingstone

18

campus. Petitioner had no viable argument to raise regarding the ten-day grace period and his attorney did not provide ineffective assistance by not raising this frivolous argument.

Petitioner also contends that counsel advised him to plead guilty while telling him that he faced an additional habitual felon charge and 20 years in prison if he did not plead guilty. It is not clear how, even if true, this would qualify as infective assistance of counsel. Petitioner was not charged as a habitual felon in Cabarrus County, but there is no reason apparent from the record that authorities could not have added that charge if he refused to plead guilty. As for a potential 20-year sentence, Petitioner received a total maximum sentence of over ten years even after pleading guilty. This was despite being sentenced in the mitigated ranges for his crimes and facing only a single habitual felon sentence. Adding a second such sentence and losing the benefit of being sentenced in the mitigated ranges would easily have moved Petitioner's sentence into the 20-year range had he not pled guilty. The fact that his attorney warned him of this or encouraged him to avoid such an outcome by pleading guilty based on the strong evidence against him and lack of viable defenses does not constitute deficient performance under Strickland. Petitioner also claims that his attorney should have advised him to take an "open plea" and receive "acceptance of responsibility." The case he cites to support this argument, United States v. Booth, 432 F.3d 542, 550 (3d Cir. 2005), deals with acceptance of responsibility under the United States Sentencing Guidelines, which apply in federal court. It is not clear how this case could have any application to cases in the courts of North Carolina. Moreover, the record clearly reflects that Petitioner did receive credit for accepting responsibility as a result of his plea in Cabarrus County. (State's Brief, Ex. 10.)

19

Therefore, whether or not his attorney advised him that he could receive credit for acceptance of responsibility by pleading guilty, there was no prejudice to Petitioner because he did, in fact, receive that credit.

Petitioner also alleges in conclusory fashion that his attorney did not properly advise him of the rights he would waive or retain by pleading guilty in Rowan County. However, this allegation directly contradicts the Transcript of Plea signed by Petitioner in that case. (Id., Ex. 18.) He provides no supporting facts for this conclusory contradiction of his sworn statements made during his plea. Therefore, this claim also fails.

Finally, Petitioner claims with regard to the Rowan sentence that his attorney originally told him that the State was offering a plea of 76 to 104 months, that Petitioner first refused but then later told him that he accepted that offer, that his attorney went to notify the prosecution and that his attorney returned with an offer of 87 to 117 months. Petitioner appears to allege that his attorney accepted this offer on his behalf without further consulting Petitioner, thereby depriving Petitioner of his opportunity to decide on the new offer. This argument ignores the fact that the Transcript of Plea form for the Rowan County convictions sets out a plea agreement of 87 to 117 months. Petitioner agreed to that offer and signed the form while pleading guilty. Whatever transpired beforehand regarding the plea negotiations, Petitioner could have rejected the offer at the time of his plea and proceeded to trial, but did not do so. Petitioner himself ultimately decided to accept the offer and plead guilty. His claim regarding the plea negotiation cannot support a claim of an involuntary plea or ineffective assistance in Rowan County.

20

Overall, Petitioner's claims are all without merit whether considered independently or as grounds for ineffective assistance of counsel. The ineffective assistance claim themselves are wholly without merit and, therefore, cannot prevail even if considered collectively. This means that, to the extent that Petitioner raised his claims in the state courts, the decisions of those courts were not contrary to, or an unreasonable application of any United States Supreme Court precedent. To the extent that Petitioner did not raise his claims in the state courts, they are unexhausted and even if considered on the merits, fail under any standard of review. Respondent's Motion for Summary Judgment should be granted and the Petitions should be denied. Petitioner's Motions seeking counsel and an evidentiary hearing will also be denied.

IT IS THEREFORE ORDERED that Petitioner's Motion to Amend [Doc. #13] is granted, that the Motion to Amend attached to Petitioner's Motion for an evidentiary hearing is granted, that Petitioner's Motion [Doc. #18] for leave to expand the record is granted, and that Petitioner's Motion [Doc. #12] to appoint counsel and Motion [Doc. #21] for an evidentiary hearing are denied.

IT IS RECOMMENDED that Respondent's Motion [Doc. #9] seeking summary judgment be granted, that the Petitions [Doc. #2 and Doc. #2-2] be denied, and that this action be dismissed.

This, the 24th day of July, 2018.

        /s/ Joi Elizabeth Peake
        United States Magistrate Judge

21